IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


REBECCA M. CARMICHAEL                           CV 06-1857-MA

        Plaintiff,                        OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


       Defendant.

    RORY LINERUD
    PO Box 1105
    Salem, OR  97308

       Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    BRITANNIA I. HOBBS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

    TERRYE E. SHEA
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA  98104-7075

       Attorneys for Defendant

MARSH, J:


1- OPINION AND ORDER

The matter before the Court is plaintiff, Rebecca M. Carmichael's, Social Security complaint (#2), brought under 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits (DIB), and supplemental security income (SSI) benefits.  42 U.S.C. § 401-433, 1381-1383f.  For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

<u>**BACKGROUND**</u>

Carmichael filed her applications for DIB and SSI on September 9, 2003.  In both applications she alleged she became disabled May 25, 2002, when she was 39 years old, due to anemia, extreme fatigue and depression.  Carmichael admitted continuing to work until September 29, 2002, when she quit her most recent job, as a hotel front desk clerk.  Her other past work included waitress in a fast-food restaurant, certified nursing assistant (CNA), housekeeper, and telemarketer.  Carmichael reportedly has a high-school education, in addition to training as a CNA (though her license expired), and some computer training.

Though not an issue in the complaint, I note that Carmichael had acquired sufficient quarters of coverage as of her alleged onset of disability date to maintain disability insured status for DIB purposes through September 30, 2007.  *See* 42 U.S.C. § 416(I)(3).

2- OPINION AND ORDER

Carmichael's applications were denied initially and upon
reconsideration.  Carmichael's late-filed request for a *de novo*
hearing before an administrative law judge (ALJ) was granted.
The first hearing, on October 20, 2005, was reset at the outset
to give Carmichael time to find an attorney.  A second hearing
was held March 14, 2006, at which Carmichael appeared and
testified, represented by an attorney.  On July 28, 2006, the ALJ
issued a written decision, finding Carmichael not disabled.  On
November 6, 2006, the Appeals Council denied Carmichael's request
for review, making the ALJ's July 28, 2006 decision the
Commissioner's final decision from which Carmichael appeals.

On appeal to this Court Carmichael contends the ALJ erred at
step five of the sequential evaluation by posing an incomplete
hypothetical question to the vocational expert (VE).

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to
establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
Cir. 1995).  To meet this burden, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected . . . to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Commissioner bears the burden of developing the record.
*DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

3- OPINION AND ORDER

The district court must affirm the Commissioner's decision
if the Commissioner applied proper legal standards and the
findings are supported by substantial evidence in the record.  42
U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
1995).  "Substantial evidence means more than a mere scintilla
but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  *Id.*

The court must weigh all the evidence, whether it supports
or detracts from the Commissioner's decision.  *Martinez v.
Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, even if the evidence is susceptible to
more than one rational interpretation.  *Andrews*, 53 F.3d at 1039-
40.  If the evidence supports the Commissioner's conclusion, the
Commissioner must be affirmed; "the court may not substitute its
judgment for that of the Commissioner."  *Edlund v. Massanari*, 253
F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential
process for determining whether a person is disabled.  *Bowen v.
Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520,
416.920.  The claimant bears the burden of proof at steps one
through four.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

Cir. 1999); 20 C.F.R. §§ 404.1512, 416.912. Each step is
potentially dispositive.

Here, at step one the ALJ found Carmichael had not engaged
in substantial gainful activity (SGA) since her alleged onset
date of disability, notwithstanding that she worked as a hotel
front desk clerk after that date, because this work was not
performed at the SGA level. *See* 20 C.F.R. §§ 404.1520(b),
416.920(b).

At step two the ALJ found Carmichael had "severe" anemia,
depressive disorder, dependant personality disorder, asthma, and
urge incontinence. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three the ALJ found that Carmichael's impairments
did not meet or equal the requirements of a listed impairment,
codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered
so severe as to automatically constitute a disability. *See* 20
C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Carmichael had the residual
functional capacity (RFC) to perform sedentary work requiring
lifting no more than 10 pounds, standing/walking for a total of 2
hours in an 8-hour workday, sitting for a total of 6 hours in an
8-hour workday. In addition, the ALJ found that Carmichael
should not have any close interaction with the general public,
should avoid exposure to high levels of air pollutants, and must

have access to a bathroom throughout the day.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Carmichael was unable to perform any of her past relevant work (PRW).  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, the ALJ found Carmichael was able to perform other work existing in significant numbers in the national economy, such as document preparer of microfilm, surveillance system monitor, and film touch-up inspector.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). Accordingly, the ALJ concluded that Carmichael was not disabled.

## DISCUSSION

The issue in this case is whether substantial evidence supports the ALJ's determination that Carmichael is not disabled, and whether that determination was based on proper legal standards.  Carmichael argues that the ALJ's decision was not based on substantial evidence because his assessment of Carmichael's RFC was flawed, and therefore he posed an incomplete hypothetical question to the vocational expert (VE) at step five. This argument is based on two assertions.  First, according to Carmichael the ALJ mistakenly interpreted her "moderate restriction in social functioning" limitation to mean only that she was restricted from working with the general public, when in

6- OPINION AND ORDER

fact she is limited in "more than just relationships with the general public."  Second, Carmichael contends the VE erroneously, or at least inconsistently, testified that on the one hand a hypothetical worker with Carmichael's profile who needed "restroom access" could perform the jobs the VE identified, while on the other hand, if that person needed two or three bathroom breaks in the morning and the same in the afternoon she could not perform any work existing in significant numbers in the national economy.

A claimant's RFC is an assessment of what she can still do despite her limitations.  SSR 96-8p.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which her medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work.  *Id*.

Here, the ALJ found the medical and testimonial evidence did support work-related limitations associated with Carmichael's urinary incontinence and social functioning.  With respect to the urinary incontinence, the ALJ did not find that a specific number of restroom breaks was supported by the record, notwithstanding Carmichael's attorney's questioning at the hearing about the need

7- OPINION AND ORDER

to use the restroom "two or three times in the morning and two or three times in the afternoon."  Rather, the ALJ determined the medical evidence supported Carmichael's need to have "restroom access" during the workday.  The ALJ noted that Carmichael did "not even mention urinary incontinence as a disabling impairment" in her Disability Report filed September 9, 2003.  Then on December 5, 2003 Carmichael reported "that her urge incontinence was improved on the Ditropan and that she was experiencing no side effects."  On a January 20, 2004 Disability Report Carmichael again failed to list urinary incontinence as a disabling impairment, though she does list the generic for Ditropan as one of her ongoing medications.  Although Carmichael continued to report periodic urinary leakage "once or twice a week" after beginning Ditropan, the ALJ concluded from his review of the medical evidence, and Carmichael's testimony that she does not wear pads to protect against urinary leakage, that overall the condition was under good control.  Accordingly, the ALJ concluded that Carmichael required restroom access, but not a set number of restroom breaks per day.  Having reviewed the same evidence myself I find this to be a reasonable conclusion.

Carmichael does not point to any evidence to support a contrary conclusion.  Notably, the ALJ left the record open following the March 14, 2006 hearing for Carmichael to provide

8- OPINION AND ORDER

post-operative medical reports.  Carmichael was reportedly
scheduled to undergo pubovaginal sling and cystology surgeries
the day after that hearing, as well as a hysterectomy, all of
which were anticipated to further reduce the frequency of her
trips to the restroom.  She did not provide this evidence.

Turning to the issue of Carmichael's social limitations, on
March 27, 2004, Department of Disability Services (DDS)
psychologist Robert Henry, Ph.D., assessed Carmichael's mental-
health related limitations based on his evaluation of her medical
records.  On August 9, 2004 Frank Lahman, Ph.D., affirmed Dr.
Henry's evaluation.  In the "Rating of Functional Limitations"
section of this evaluation Dr. Henry checked the following boxes:
(1) "mild" restriction of activities of daily living; (2)
"moderate" difficulties in maintaining social functioning; (3)
"mild" difficulties in maintaining concentration, persistence, or
pace.  The ALJ credited these findings, and included in his
assessment of Carmichael's RFC a limitation from all "close
interaction with the general public."

Carmichael contends the ALJ's translation of the "moderate"
difficulty with social functioning to only a limitation from
close interaction with the general public is legally insufficient
and factually inaccurate.  She argues that "social functioning
encompasses more than just relationships with the general

public," but also "a person's ability to perform work with coworkers, supervisors, and members of other business entities." According to Carmichael, her increasingly isolated lifestyle evinces her limitation in this area is not only from close interaction with the general public, but also from working closely with coworkers, supervisors and others.  Carmichael argues that the ALJ should have recontacted Dr. Lahman and/or Dr. Henry for clarification about this limitation.

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence.  *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 1999).  The ALJ's duty to further develop the record is only triggered when the record contains conflicting or ambiguous medical evidence that cannot be resolved by reference to other record evidence.  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e).

In this case, the ALJ did not need to recontact Dr. Lahman or Dr. Henry for clarification about what they meant by a "moderate" restriction in social functioning because the ALJ resolved any ambiguity by reference to other evidence in the record which caused him to reject Carmichael's credibility – a finding she does not challenge – and conclude that her social isolation was self-imposed, not due to a medically determinable impairment.

In rejecting Carmichael's credibility the ALJ stated that he found her impairments could certainly be expected to produce some of the symptoms she reported, but her "statements concerning the intensity, duration and limiting effects of her symptoms are not entirely credible." He then thoroughly reviewed the medical evidence, highlighting two medical opinions, in particular. One was the opinion of nurse practitioner Helen Poindexter, who treated Carmichael's multiple conditions over a period of years and opined in February 2004 that Carmichael could, and should, work. The other was the opinion of Michelle Whitehead, Ph.D., who concluded from her February 25, 2004 psychodiagnostic exam of Carmichael that she was dependant on others for emotional and financial support by design, having "positioned herself geographically [in such a way as to interfere] with being able to obtain employment." Dr. Whitehead further stated that Carmichael "does not want to work even though she may be able to for at least 4-5 hours per day. She is likely using some of her emotional complaints, with possible exaggeration as the basis for not being employable."

Carmichael does not object to the ALJ's adoption of these two medical source statements, nor does she point to any reason I should conclude that the ALJ unreasonably deduced from these opinions that Carmichael's social limitation was from interaction with the general public, and did not extend to limitations with

co-workers and supervisors.  Accordingly, I find the ALJ

reasonably included in Carmichael's RFC assessment a limitation

from close interaction with the general public, no more, no less.

In sum, I do not find any merit to Carmichael's objections

to the ALJ's opinion, finding her not disabled.

<u>**CONCLUSION**</u>

Based on the foregoing, the Commissioner's decision is

AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _29 day of May, 2008.

                     /s/  Malcolm F. Marsh
                    Malcolm F. Marsh
                    United States District Judge

12- OPINION AND ORDER